

CHAMBERS OF
TIMOTHY M. REIF
JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, N.Y. 10278-0001

January 8, 2026

**VIA CM/ECF**

Re:   *Baroque Timber Industries (Zhongshan) Co., Ltd. et al v. United States*
Court No. 24-00106

Dear Counsel:

Oral argument in this action is scheduled for January 15, 2026, at 10:00am ET in Courtroom No. 1 of the U.S. Court of International Trade, One Federal Plaza, New York, New York, with the option to appear via video conference.  In preparation for oral argument, the court would like counsel to be prepared to address the issues noted below.  As the court continues to review the documents in this case or as the argument progresses, the court may decide to ask additional questions.

Please be advised that the court prefers to conduct oral argument interactively, allowing each party to respond to the question presented before moving on to the next question.  To facilitate this interaction, counsel are welcome to remain seated for the duration of the hearing.  Any counsel who intends to participate virtually via video conference is instructed to inform the case manager, Jason Chien, and is further instructed to test their Internet connection, audio performance and video performance prior to joining the oral argument.  If counsel experiences any difficulties during the test, the court instructs counsel to connect to the oral argument through the provided telephone dial-in.  In this case, counsel may also choose to connect with their computer camera but must speak through the telephone.  Finally, counsel is instructed to turn their camera on and to remain visible to the court throughout the duration of the oral argument.

Please be advised that the use of personal devices with screens is prohibited in the courtroom during the duration of the oral argument.

For the oral argument, the court would like parties to focus primarily on the following issues.

**I.      Commerce's decision to exclude the ITTO TTMR export price data**

    A.     In the IDM, Commerce explained that "the TTMR data report AUVs for exports of certain species of veneer and plywood from Ghana, Peru, and Brazil to all destinations." IDM at 51 n. 217. Instead, the record shows that *some* of the export price data are to *specified* destinations. In particular, the export price data for plywood from Brazil are based entirely on exports to the European Union ("E.U."), the data for plywood from Peru are based entirely on exports to Mexico and the data for plywood and veneer from Ghana are based entirely on exports to "regional markets." *See* Baroque Benchmark Submission, Ex. 3; *see also* Baroque Br. at 12-15. This Court has held that, if Commerce's determination "is still supported by substantial evidence — even with the errors — the errors are harmless." *CVB, Inc. v. United States*, 47 CIT __, __, 675 F. Supp. 3d 1324, 1343–44 (2023); *see also Belton Indus., Inc. v. United States*, 6 F.3d 756, 761 (Fed. Cir. 1993). Please address the following:

- Whether Commerce's finding that "the data report AUVs for exports . . . to all destinations," IDM at 51, was overly broad and erroneous.

- Whether Commerce's determination that "the underlying data provide no means of breaking out and removing exports destined for China," IDM at 51, remains supported by substantial evidence notwithstanding this error.

- Whether the dataset can be segregated in a manner that would allow Commerce to ensure the exclusion of exports potentially destined for China, including exports to unverified destinations.

    B.     Baroque maintains that Commerce's decision to exclude the data based solely on the *absence* of information regarding the destinations of the reported exports constitutes "speculation." Please address:

- Whether Baroque's argument that Commerce's determination was based on "speculation" is properly understood as a substantial evidence challenge to Commerce's determination, or as a claim that Commerce's determination was not in accordance with law under 19 C.F.R. § 351.511(a)(2)(ii).

2

- Whether Commerce drew a reasonable inference from the record that export destinations in the ITTO TTMR dataset were unverified and could not be disaggregated.

C. Baroque argues that the export destinations in the dataset reflect Free on Board ("FOB") port prices, such that the ultimate export destinations are irrelevant to the benchmark analysis. Baroque Br. at 12. Baroque contends further that the use of "Euros" in the Ghana export data indicates that the products are destined for markets other than China. *Id*. Baroque maintains that these features of the dataset undermine Commerce's conclusion that the ITTO TTMR export price data could not be used to construct a benchmark because the record did not establish that the dataset excluded export prices to China. Please address:

- Whether, and to what extent, Baroque's FOB-pricing and currency-based arguments, if supported, undermine Commerce's reasoning and conclusion, and whether Commerce was therefore required to address those arguments in the IDM.

II. **Whether Commerce's rejection of the ITTO TTMR dataset was contrary to past practice**

A. Commerce used data from ITTO TTMR datasets in three prior administrative reviews: the 2018, 2019 and 2020 MLWF reviews. This Court has held that "[a]n action . . . becomes an 'agency practice' when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to the established practice or procedure." *Ranchers-Cattlemen Action Legal Found. v. United States*, 23 CIT 861, 884–85, 74 F. Supp. 2d 1353, 1374 (1999). Please address:

- Whether there was a uniform and established procedure with respect to Commerce's assessment of ITTO TTMR datasets in the three prior administrative reviews.

B. The government maintains that, in these prior MLWF reviews, Commerce did not consider the issues of unverifiable export price data or inland freight requirements for domestic price data. *See* Def. Br. at 14, 18. This Court has held that where "the issue was never examined in prior administrative reviews . . . it is not possible to determine whether prior facts were identical to this review and whether Commerce altered the analytical framework." *Venus Wire Indus. Pvt. Ltd. v. United States*, 43 CIT__, __, 424 F. Supp. 3d 1369, 1376 (2019). Please address:

3

- Whether Commerce examined the same issues presented here in the 2018, 2019 and 2020 MLWF reviews administrative reviews — namely the issues of unverifiable export price data or the inland freight price requirements for domestic price data — such that those reviews could give rise to a uniform and established agency procedure.

- Whether Commerce's acceptance of ITTO TTMR datasets in prior administrative reviews established an agency practice notwithstanding that Commerce did not expressly identify or single out the specific dataset characteristics at issue here as the basis for that acceptance.

C. In the IDM, Commerce cited prior reviews in which it rejected export price data because it was unable to determine whether the data contained exports to China. *See* IDM at 51 n. 220 (citing *Certain Metal Lockers and Parts Thereof from the People's Republic of China: Preliminary Results and Partial Rescission of the Countervailing Duty Administrative Review; 2020-2021*, 88 FR 61514 (September 7, 2023) ("Metal Lockers"), and accompanying PDM at 26, unchanged in *Certain Metal Lockers and Parts Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2020- 2021*, 89 FR 11251 (February 14, 2024), and accompanying IDM at cmt. 3). Commerce also cited prior reviews in which it required inland freight prices. *See* IDM at 52 n. 226 (citing *Countervailing Duty Investigation of Certain Polyethylene Terephthalate Resin from the People's Republic of China: Final Affirmative Determination*, 81 FR 13337 (March 14, 2016), and accompanying IDM at cmt. 14). Please explain:

- What legal significance, if any, should be accorded to Commerce's citation of prior administrative reviews in the IDM for purposes of establishing, distinguishing or rejecting a claim of past practice.

- Whether, and to what extent, the fact that Commerce's discussion of export price data appeared in the preliminary results of *Metal Lockers* — as opposed to the Final Results — affects the weight to be accorded to or relevance of that determination.

- Whether, and to what extent, Commerce's prior treatment of inland freight as an *adjustment* to a benchmark price, rather than as a basis for rejecting a dataset, affects the relevance of that determination to this proceeding.

- D. Baroque argues that "despite following that practice in its preliminary results, Commerce for the first time in the Final Results refused to rely on ITTO TTMR in the benchmark for plywood, veneers and fiberboard." Baroque Br. at 11. This Court has recognized that "Commerce is not bound by the positions taken or the methodologies employed in its preliminary determinations." *U.S. Steel Corp. v. United States*, 34 CIT 252, 281, 712 F. Supp. 2d 1330, 1355 (2010); *see also Peer Bearing Co. v. United States*, 22 CIT 472, 481–82, 12 F. Supp. 2d 445, 456 (1998); *Kumho Tire (Vietnam) Co., Ltd. v. United States*, 48 CIT __, __, 741 F. Supp. 3d 1277 (2024). Please address:

  - Whether the fact that Commerce declined to rely on the ITTO TTMR data "for the first time" in the Final Results has independent legal significance, given that Commerce is not bound by its preliminary determinations.

III. **Commerce's application of adverse facts available to find certain of Baroque's input suppliers to be government authorities**

- A. In the IDM, Commerce stated that the GOC's company statements and narrative denials of CCP influence, without supporting government documentation, did not provide sufficient detail regarding the extent of CCP involvement in the suppliers. IDM at cmt. 4. Commerce explained further that its "request for information from the GOC is a request for *government information independent from company information*." *Id.* (emphasis supplied). This Court has held that a respondent "cannot logically be faulted for failing to provide information beyond the scope of the question that Commerce asked." *Jinan Yipin Corp.*, 31 CIT 1901, 1916, 526 F. Supp. 2d 1347, 1360-61 (2007). Please address:

  - Which questions in the Initial or Supplemental Questionnaires request specifically that the GOC provide supporting *government* documentation.

  - Whether the GOC was provided with "an opportunity to remedy or explain" its failure to submit government documentation, as required by 19 U.S.C. § 1677m(d).

- B. In the IDM, Commerce stated that "[p]ublicly available information indicates that *Chinese law requires the establishment of CCP organizations 'in all companies*, whether state, private, domestic, or foreign-invested' and that such organizations may wield a controlling influence in the company's affairs." IDM at 47 (quoting *Certain Metal*

5

*Lockers and Parts Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 86 FR 35741 (July 7, 2021) ("Metal Lockers"), and accompanying IDM at cmt. 5) (emphasis supplied). Please address:

- What kind of government or other documentation does the GOC use to monitor and enforce compliance with this law?

- Would such documentation provide Commerce with a basis to accept the GOC's denial of CCP influence in a private company. And, if so, how would the information do so?

The court prefers to discuss any confidential information all at once, following the public session, at which time those without authorized access to confidential information will be asked to leave the Courtroom or be dropped from the videoconference.

Parties may raise other issues that they consider to be of highest importance. Thank you for your assistance and cooperation.

Sincerely,

/s/ Timothy M. Reif

_____

Timothy M. Reif, Judge