**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| BAROQUE TIMBER INDUS. (ZHONGSHAN) CO., and RIVERSIDE PLYWOOD CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 24-00106 |
| UNITED STATES, | ) | |
| Defendant, | ) | |

**DEFENDANT'S RESPONSE TO THE PARTIES' COMMENTS ON THE DEPARTMENT OF COMMERCE'S FINAL RESULTS OF REDETERMINATION**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

BRENDAN JORDAN
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0342
E-mail: Brendan.D.Jordan@usdoj.gov

OF COUNSEL:
Alyson Finley
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

October 5, 2026

Attorneys for Defendant

# TABLE OF CONTENTS

BACKGROUND .......... 1

ARGUMENT .......... 6

I. Standard Of Review .......... 6

II. Commerce's Calculation of the Plywood and Veneer for LTAR Benchmarks Is Supported by Substantial Evidence and in Accordance with Law .......... 7

III. Commerce Complied with 19 U.S.C. § 1677m(d) and Its Application of AFA to Find Certain of Baroque's Input Suppliers to Be Government Authorities Is Supported by Substantial Evidence and in Accordance with Law .......... 8

CONCLUSION .......... 16

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Baroque Timber Industries (Zhongshan) Co., Ltd. and Riverside Plywood Corporation v. United States*,
Consol. Court No. 24-00106, Slip Op. 26-32 (CIT April 7, 2026) ........................................... 5

*Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States*,
Slip Op. 2026-32 (Ct. Int'l Trade 2026) ........................................... 3

*Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States*,
776 F. Supp. 3d 1290 (Ct Int'l Trade 2025) ........................................... 9

*Bethlehem Steel Corp. v. United States*,
223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ........................................... 7

*Dalian Meisen Woodworking Co. v. United States*,
No. 20-00110, 2022 WL 1598896 (Ct. Int'l Trade May 12, 2022) ........................................... 11

*Hyundai Elec. & Energy Sys. Co. v. United States*,
466 F. Supp. 3d 1303 (Ct. Int'l Trade 2020), *aff'd*, 15 F.4th 1078 (Fed. Cir. 2021) ................ 14

*Zenith Elecs. Corp. v. United States*,
988 F.2d 1573 (Fed. Cir. 1993) ........................................... 13

**Statutes**

19 U.S.C. § 1516a(b) ........................................... 7

19 U.S.C. § 1677(5) ........................................... 8, 16

19 U.S.C. § 1677e(a) ........................................... 4

19 U.S.C. § 1677m(c) ........................................... 6

19 U.S.C. § 1677m(d) ........................................... 8, 9, 13

**Regulations**

19 C.F.R. § 351.307(d) ........................................... 14, 15

*Frozen Warmwater Shrimp From Indonesia: Final Negative Countervailing Duty Determination*, 89 Fed. Reg. 85,512 (Oct. 28, 2024) ........................................................................................ 15

*Multilayered Wood Flooring from the People's Republic of China: Final Results of Countervailing Duty Administrati*ve Review; 2021, 89 Fed. Reg. 41,939 (Dep't of Commerce May 14, 2024)..................................................... 2, 3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| BAROQUE TIMBER INDUS. (ZHONGSHAN) CO., and RIVERSIDE PLYWOOD CORPORATION, Plaintiff, | |
| v. | Court No. 24-00106 |
| UNITED STATES, Defendant, | |

**ORDER**

Upon consideration of consolidated plaintiffs' comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained

AND final judgment is entered in favor of the United States.

Date:________________
New York, NY

_________________________
Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| BAROQUE TIMBER INDUS. (ZHONGSHAN) CO., and RIVERSIDE PLYWOOD CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 24-00106 |
| UNITED STATES, | ) | |
| Defendant, | ) | |

**DEFENDANT'S RESPONSE TO THE PARTIES' COMMENTS ON THE DEPARTMENT OF COMMERCE'S FINAL RESULTS OF REDETERMINATION**

Defendant, the United States, respectfully responds to the comments of plaintiffs, Baroque Timber Industries (Zhongshan) Co., Ltd. and Riverside Plywood Corporation (collectively, Baroque) (Baroque Cmts.) (ECF Nos. 56-57) concerning the Department of Commerce's remand results in this matter. Final Results of Redetermination Pursuant to Court Remand (July 6, 2026) (ECF No. 51) (P.R.R. 2) (Remand Results). We respectfully request that the Court sustain the remand results because they comply with the Court's remand order and because they are supported by substantial evidence and otherwise lawful.

**BACKGROUND**

This case concerns Commerce's final results in the administrative review of the countervailing duty order covering multilayered wood flooring from the People's Republic of China, for the period of review from January 1, 2021, to December 31, 2021. *See Multilayered Wood Flooring from the People's Republic of China: Final Results of Countervailing Duty*

*Administrative Review*; 2021, 89 Fed. Reg. 41,939 (Dep't of Commerce May 14, 2024) (Final Results), (P.R. 332) and accompanying Issues and Decision Memorandum (Dep't of Commerce May 7, 2024) (IDM), (P.R. 326).

On April 7, 2026, the Court sustained-in-part and remanded-in-part Commerce's final results. *Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States*, Slip Op. 2026-32 (Ct. Int'l Trade 2026) (Remand Order) (ECF No. 50). In the remand order, the Court sustained Commerce with respect to its calculation of a fiberboard benchmark. However, the Court remanded Commerce to: (1) correct its factual misstatement regarding the data in the International Tropical Timber Organization Tropical Timber Market Report (ITTO TTMR), identify which portions of the ITTO TTMR export dataset contain specified/unspecified export destinations, evaluate whether Commerce can disaggregate certain portions of the ITTO TTMR data, and reconsider whether it is appropriate to include certain additional data from the ITTO TTMR report, (including the export price data from Ghana to "regional markets"), in the benchmark for the benefit calculation of the provision of plywood and veneer for less than adequate remuneration (LTAR) programs; and (2) to identify specific deficiencies and request supplemental information, if necessary, for the information provided in supplemental responses regarding certain input suppliers by the Government of the People's Republic of China (GOC) and reexamine Commerce's application of adverse facts available (AFA) finding that certain of the companies that supplied inputs to Riverside Plywood Corp., (Riverside) and its cross-owned affiliate Baroque Timber Industries (Zhongshan) Co., Ltd. (Baroque) are government authorities.

Regarding Commerce's application of AFA, the Court sustained Commerce's determination that government documentation was necessary, holding that Commerce "explained adequately and determined reasonably that 'necessary information {was} not available on the

record,' 19 U.S.C. § 1677e(a), because the GOC's responses, which consisted of internal company statements and narrative denials, did not provide a sufficient basis for Commerce to assess the extent of CCP involvement in the input suppliers." Remand Order at 34 (quoting IDM at 45). But the Court remanded the final results for Commerce to: (1) identify with specificity the deficiencies in the GOC's initial or supplemental responses to the nine entities, CCP officials and other related questions; (2) describe precisely and clearly the nature of each deficiency and what information could correct that deficiency; (3) if Commerce continues to determine that supporting government documentation is necessary information, request that government information explicitly from the GOC; and (4) provide the GOC an opportunity consistent with § 1677m(d) to remedy any specified deficiencies. Remand Order at 40.

On May 5, 2026, Commerce reopened the record and issued a supplemental questionnaire to the GOC explicitly requesting government documentation to support its questionnaire response with respect to certain input suppliers. *See* Commerce's Letter, "Supplemental Questionnaire Pursuant to Court Remand," dated May 5, 2026 (Remand Supplemental Questionnaire) (P.R.R. 7)(C.R.R. 7). In the Remand Supplemental Questionnaire, Commerce requested that the GOC "provide government documentation, *e.g.*, CCP records, database search results, or other GOC and/or CCP documentation from the national or sub national levels to substantiate the GOC's claims that no individual owners, members of the board of directors, or senior managers were Government or CCP officials during the POR," as the GOC reported in its initial questionnaire responses. Remand Supp. Questionnaire at 6-7 (citing GOC's IQR at Exhibit LTAR-1, pages 51-56 and 72-73 of Exhibit LTAR-1). The Remand Supplemental Questionnaire also asked the GOC to explain how the input suppliers determined the information they reported to the GOC about the influence of the GOC/CCP in their operations and the steps

(if any) the GOC took to verify the information the input suppliers reported to the GOC. *Id.* at 4-6.

In response, the GOC continued to decline to provide *any* additional documentation, government or otherwise, to substantiate its claims about the role and influence of the GOC/CCP in the input suppliers in question. *See* Remand Results at 14. Instead, the GOC explained that it relied solely on responses to questionnaires the GOC sent to these suppliers and claimed this information is sufficient for Commerce's analysis. *See* GOC's Letter, "Remand Supplemental Questionnaire," dated May 12, 2026 at 3-8 (P.R.R. 6) (C.R.R. 6) (GOC Remand Supp. Questionnaire Response).

Regarding Commerce's request that the GOC provide government (including CCP) documentation in support of its claim that no individual owners, members of the board of directors, or senior managers of the input suppliers were GOC or CCP officials during the POR, the GOC stated that "there is no central governmental database to search for the requested information . . . {t}herefore the GOC cannot provide government documentation as requested by {Commerce}." GOC Remand Supp. Questionnaire Response at 6. The GOC explained that it derived its responses from the responses received directly from the input suppliers, which it claimed is sufficient support for its questionnaire response that no individual owners, members of the board of directors, or senior managers of the input suppliers were GOC or CCP officials during the POR. *Id.* at 7.

On June 17, 2026, Commerce released its draft remand results to interested parties. *See* Draft Results of Redetermination, *Baroque Timber Industries (Zhongshan) Co., Ltd. and Riverside Plywood Corporation v. United States*, Consol. Court No. 24-00106, Slip Op. 26-32 (CIT April 7, 2026), dated June 17, 2026 (Draft Remand) (P.R.R. 5). On June 24, 2026,

Commerce received comments only from Baroque. *See* Baroque's Letter, "Comments on Draft Remand," dated June 24, 2026 (Baroque's Draft Remand Cmts.) (P.R.R. 3) (C.R.R. 3). No other interested party filed comments.

On July 6, 2026, Commerce filed the final results of redetermination pursuant to the Court's Remand Order. In compliance with the Court's remand order, Commerce reevaluated its exclusion of the ITTO TTMR data in the plywood and veneer benchmarks and fulfilled its obligations to notify the GOC of deficiencies with its response prior to applying AFA. Remand Results at 14-19. Commerce found that certain of the ITTO TTMR data are suitable for inclusion in the veneer and plywood benchmarks. *Id*. at 11-14. Additionally, Commerce clarified that it did not limit the scope of its request for documentation in its supplemental questionnaire in order to permit the GOC to provide the government documentation that best supported its claims and did not specify that such documentation must be derived from a central government database. *Id*. at 16. Commerce also noted that the GOC did not suggest any alternative forms to submit the requested information consistent with 19 U.S.C. § 1677m(c)(1). *Id*. at 17.

Commerce continued to determine that government or official documentation was necessary for its analysis of Riverside and Baroque's input suppliers. Because the GOC failed to provide such documentation in response to Commerce's specific requests for necessary supporting documentation in a supplemental questionnaire issued on remand, Commerce continued to find that the application of AFA was warranted to find that certain companies that supplied inputs to Riverside and Baroque during the POR are government authorities. *Id*. at 11.

## ARGUMENT

### I. Standard Of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Id.* (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

## II. Commerce's Calculation of the Plywood and Veneer for LTAR Benchmarks Is Supported by Substantial Evidence and in Accordance with Law

As an initial matter, Commerce complied with the Court's remand order to reevaluate its previous exclusion of ITTO TTMR data in the plywood and veneer benchmarks. Commerce found that certain of the ITTO TTMR data are suitable for inclusion in the veneer and plywood benchmarks. Remand Results at 10-11. Upon reexamination of the source documentation for the ITTO TTMR, Commerce found that the TTMR provided certain additional information about the market destination of the export price data for Peru, Brazil, which indicated that such data did not appear to contain prices to China. *Id*. at 11-12. Additionally, Commerce found that certain information regarding the market destination of the ITTO TTMR plywood and veneer export price data from Ghana supported Baroque's claim that the Ghana plywood and veneer export price data represent sales markets other than China, even though the exact destinations are not specified and cannot be disaggregated. *Id*. at 12-13.

Regarding grade specificity, Commerce evaluated record evidence that certain of Baroque's plywood purchases were of lower C or D grade. *Id*. at 13 (citing Riverside's Benchmark Submission at Exhibit 6). Commerce observed that while ITTO TTMR data for Peru appeared to include both core and face veneer, the ITTO TTMR Ghana data for veneer are reported separately for core and face veneer of certain species. *Id*.

After reexamining this record evidence, Commerce found that the ITTO TTMR plywood data for Ghana (BB/CC grade), Brazil (C/CC grade), and Peru (mostly B/C grade) are comparable to Baroque's purchases, and that the ITTO TTMR data are suitable benchmarks for Baroque's veneer and plywood purchases. *Id*. Because Commerce found that it would be inappropriate to use the Ghanian core data to value Baroque's purchases of face veneer and *vice versa*, Commerce valued Baroque's purchases of backboard veneer and face veneer using separate benchmarks, consistent with the methodology in Commerce's preliminary results. *Id*. at 13-14.

Because no party challenges Commerce's finding with respect to the veneer and plywood benchmark on remand, and because Commerce's findings are supported by substantial evidence and in accordance with law, the Court should sustain them.

## III. Commerce Complied with 19 U.S.C. § 1677m(d) and Its Application of AFA to Find Certain of Baroque's Input Suppliers to Be Government Authorities Is Supported by Substantial Evidence and in Accordance with Law

On remand, Commerce continued to determine that government documentation is necessary for its analysis of Baroque's input suppliers and possible connections to the GOC or CCP. Remand Results at 14. Commerce reopened the record to request the GOC to provide any government or official documentation to support its claims and to further inquire about certain identified deficiencies in the GOC's prior responses. Remand Results at 14-19. The GOC continued to decline to provide any documentation. Remand Results at 15-19. Accordingly, Commerce complied with this Court's remand order and its obligations under 19 U.S.C. § 1677m(d), and its determination to continue to apply AFA to find certain of Baroque's input suppliers to be authorities within the meaning of 19 U.S.C. § 1677(5)(B) is supported by substantial evidence.

The Court has already held that Commerce determined reasonably that the GOC did not provide information necessary for Commerce to analyze whether certain of Baroque's input suppliers are government authorities. *Remand Order* at 34; *see also Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States*, 776 F. Supp. 3d 1290, 1310-11 (Ct Int'l Trade 2025). The Court, however, found that Commerce did not comply with its obligations under 19 U.S.C. § 1677m(d) to provide the GOC with an opportunity to cure deficiencies. *Remand Order* at 40. On remand, Commerce notified the GOC of the deficiency in its responses and provided an opportunity to cure that deficiency by providing the government documentation needed to bridge the gap in this record. The GOC did not provide any government documentation in response. Nevertheless, Baroque devotes most of its arguments to requesting that the Court revisit its original analysis of whether Commerce reasonably determined that it required government documentation. Baroque Cmts. at 2-10. This Court should decline to do so.

Baroque's only argument that Commerce did not comply with its obligations under 19 U.S.C. § 1677m(d) is that Commerce should have identified specifically what type of government or CCP documentation it wished for the GOC to provide. Baroque Cmts. at 5-6. However, Commerce's request was intentionally open-ended to allow the GOC flexibility to provide whatever information it believed would be sufficient to support its claim that no individual owners, members of the board of directors, or senior managers of the input suppliers were GOC or CCP officials. Remand Results at 17. Commerce explained that it could not speculate as to the forms of government documentation that the GOC could provide that would best demonstrate that the key people in the input suppliers in question are not officials in the government or CCP. *Id*. at 26. Baroque's argument that Commerce's request was *too* broad ignores the fact that the GOC did not provide *any* documentation. Had the GOC provided any

form of government documentation, Commerce could have analyzed it and notified the GOC of any continuing deficiencies it identified in the response. But the GOC's refusal to provide any government documentation precluded this possibility. *Id*. at 27.

Baroque's remaining arguments revisit whether Commerce reasonably determined that government or official documentation was necessary. We will address each argument in turn.

First, Baroque argues that Commerce does not support its conclusion that the GOC exercises meaningful control over private entities and uses them to effectuate its goals of upholding the socialist market economy, allocating resources, and maintaining the predominant role of the state sector. Baroque Cmts. at 2-3. Baroque contends that the portions of the Public Bodies Memorandum cited by Commerce only support that CCP primary party organizations exercise meaningful influence. *Id.* Accordingly, Baroque seemingly suggests that Commerce does not support its conclusion that the presence of CCP officials amongst a company's managers or board members is sufficient to demonstrate influence. *See id*. However, Commerce reasonably concluded that knowledge of whether a company's managers or board members are active government or CCP officials, including being members of the relevant CCP entities is relevant to determining whether the GOC exerts meaningful influence over that company. Baroque's hyperfocus on a single indicator of control misses the bigger picture that this is not the only lever of meaningful influence.

Baroque then contends that the information provided by the GOC is sufficient for Commerce to verify at the input suppliers. Baroque Cmts. at 3-4. Yet, although Baroque contends that HR department records or other company documents would reflect whether its employees were members or representatives of the CCP, the GOC's questionnaire responses state that companies are not required to record or report in their internal records and documents

whether any company owners, members of the board of directors or managers are officials in the nine entities. *See* Baroque Cmts. at 4; Remand Results at 23 (citing GOC's IQR at Exhibit LTAR-1, p. 74). Thus, the fact that a company *lacks* records of this nature is not sufficient for Commerce to verify that a company's managers or board members are *not* active government or CCP officials because the missing records could mean either that there is not a CCP official at that company, or that the company does not keep that information. Further, Commerce considered that the company certifications are pro forma in nature and lack details for examining possible government involvement in each company. Remand Results at 25. Without such details, and without official documentation to evaluate and review to corroborate or confirm the suppliers' statements, Commerce cannot evaluate the extent of GOC or CCP involvement in each input supplier in order to verify these certifications. *Id*.

Baroque asserts, without support, that "there is no gap in the record and Commerce cannot create one by requiring government documents." *See* Baroque Cmts. at 4 (citing *Dalian Meisen Woodworking Co. v. United States*, No. 20-00110, 2022 WL 1598896, at *8–9 (Ct. Int'l Trade May 12, 2022)). Yet this gap exists and was not created by Commerce. *See* Remand Order at 34. Here, Commerce appropriately determined under § 1677e(a) that government documentation was both necessary and unavailable on this record. This Court has already held that Commerce "explained adequately and determined reasonably" that a gap in the record was created by the lack of government documentation sufficient for Commerce to determine whether the input suppliers were government authorities. Commerce clearly identified this gap in the record and directly asked the GOC, per the Court's remand order, to provide information sufficient to fill that gap. *See* Remand Results at 14. Nevertheless, the GOC did not submit any additional documentation to permit Commerce to verify its claims. *See id*.

Next, Baroque contends that Commerce should have been satisfied with the GOC's response that there is no central database. Baroque Cmts. at 4-5. But as Baroque notes, Commerce made clear that it "did not limit the scope of its question, for the purpose of allowing the GOC opportunity to provide the government documentation that best supports its claim." Remand Results at 17. The examples Commerce provides are illustrative and intentionally non-exhaustive, as the GOC is best placed to identify the types of government documentation that could substantiate its claims. Thus, even if there is not a central or national CCP database from which to pull documentation, the lack of such a database would not prevent the GOC from providing *some* form of government documentation in response to Commerce's direct request. Commerce's non-exhaustive list might not precisely match current GOC or CCP documentation formats, but it would be unreasonable for Commerce to conclude that the GOC lacks access to any such information or an ability to procure or produce some form of verifiable government documentation. Remand Results at 28-29. Baroque claims that "Commerce mistakenly conflates inability with unwillingness," arguing that "the GOC cannot be expected to produce records the Entities had no reason or obligation to create." Baroque Cmts. at 7. Yet, Commerce was reasonably skeptical of the claim that the CCP cannot verify the existence or identity of CCP officials, given its requirements that private companies establish primary party organizations based on the number of CCP members they employ. Remand Results at 29. Baroque claims that "{o}rganizations maintain records of members and participants, not records of every individual who has never been affiliated with them." But that argument is inapt here where a certain numerical threshold for CCP members within a given company triggers the establishment of a primary party organization. Baroque argues that the GOC "confirmed in its supplemental response that none of the relevant input suppliers had primary party organizations because *none*

*of them had more than three CCP members*." Baroque Cmts. at 7 (citing GOC Remand Supp. Response at 2-4) (emphasis added). It is reasonable to presume that, in order to make this statement, the GOC would have access to whatever official documentation it used to verify how many individuals within each of the input suppliers were CCP members. *See* Remand Results at 29. The CCP would need to establish some way to track their own ranks and when that numerical threshold was met. *See id.* Yet Baroque implies that the CCP has no tracking of the individuals who are officials in the nine entities and that the count starts at three when determining whether "three or more members of the CCP" are present in a company and a primary party organization must be established. *See* Baroque Cmts. at 7-8.

Baroque finds it "notable that Commerce cannot identify a possible source of government documentation that would be acceptable beyond a central database to prove the negative regarding the presence of Government or CCP officials in the suppliers." Baroque Cmts. at 6. But Commerce is not required to identify with precision the exact form of official documentation that would best substantiate the GOC's claims in this proceeding. To the contrary, "{t}he burden of production should belong to the party in possession of the necessary information." *Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993). Commerce complied with the Court's instruction on remand and met its obligations under § 1677m(d) to notify the GOC of the specific deficiency in its responses, directly request the supplemental government documentation needed to verify the GOC's claims and correct the deficiency, and provide the GOC an opportunity to remedy the deficiency and complete the record. Remand Order at 40. The GOC declined this opportunity to provide necessary government documentation.

Baroque claims that Commerce's reference to prior proceedings where the GOC was able to provide official CCP documentation is not applicable since the specific factual situation at

issue was different. *See* Baroque Cmts. at 6-7. Baroque further argues that "Commerce did not require in *Citric Acid from China 2012* that the GOC demonstrate with official documentation that the owner was not part of any of the other 9 Entities . . . ." Baroque Cmts. at 7. But Commerce's reference to prior proceedings was intended to demonstrate the GOC's ability to procure and submit official CCP documentation, not to analogize to any specific factual scenarios. Remand Results at 18. Here, rather than attempting to comply with Commerce's request for supporting government documentation, as it did in *Citric Acid from China 2012*, the GOC instead declined to provide *any* CCP or GOC records. *See* Remand Results at 17-18. Thus, Commerce lacks any government documentation to bridge the gap in this record and verify the accuracy of Baroque's claim that "{n}one of the individuals in any of the suppliers are part of any relevant authority." *See* Baroque Cmts. at 7. Moreover, the format of Commerce's requests for documentation in *Citric Acid from China 2012* were based on that specific record in a factual scenario where the GOC responded with some form of official documentation. *See* Remand Results at 18, 30.

Next, Baroque argues that it is "absurd" to expect the GOC to provide Commerce officials the ability to verify data contained in a government database. Baroque Cmts. at 9. However, the GOC did not even provide Commerce with the database information that Commerce could verify in the first place. And in any event, Commerce did not act unreasonably in requesting documentation that would have the added benefit of facilitating verification efforts, which assist Commerce in fulling its statutory mandate to ensure the accuracy of information. *See Hyundai Elec. & Energy Sys. Co. v. United States*, 466 F. Supp. 3d 1303, 1318 n.22 (Ct. Int'l Trade 2020), *aff'd*, 15 F.4th 1078 (Fed. Cir. 2021) ("The purpose of verification is to verify the accuracy and completeness of submitted factual information . . .") (citing 19 C.F.R. §

351.307(d)) (cleaned up). Indeed, Commerce regularly conducts verification of government responses in countervailing duty proceedings to verify original source documentation and to support reported information. *See*, *e.g.*, *Frozen Warmwater Shrimp From Indonesia: Final Negative Countervailing Duty Determination*, 89 Fed. Reg. 85,512 (Oct. 28, 2024), and accompanying IDM at Cmt. 2 ("We arranged a video call with government officials from the Indonesian Export Financing Agency, known as Lembaga Pembiayaan Ekspor Indonesia (LPEI) or Eximbank, regarding their operations and program participant databases . . . We asked the officials to query several companies in the database to assist us in determining if they were past or current Eximbank customers. . . . None of these names/companies appeared in the Eximbank's database.").

Finally, Baroque claims that "Commerce fails to address that two of Baroque's suppliers are non-cross-owned affiliates," and that Commerce "could have sought this information from Baroque's affiliates, which are subject to this proceeding and could be verified." Baroque Cmts. at 10. Baroque presumes that Commerce could rely solely on company-sourced documents and records to verify that the GOC and CCP did not exercise meaningful control over the input suppliers. But Commerce has previously explained why it requires government documentation to analyze whether Baroque's input suppliers are government authorities. Remand Results at 29. Specifically, Commerce explained that information from the GOC, including the CCP, is necessary for Commerce to evaluate the GOC's claim that no individual owners, members of the board of directors, or senior managers of the input suppliers were Government or CCP officials during the POR. *Id*. at 29-30. And Baroque provides no basis for this Court to disturb its prior finding that "Commerce explained adequately and determined reasonably that . . . absent government documentation addressing CCP involvement, the information on the record was

insufficient to permit a determination of whether the input suppliers were government authorities." Remand Order at 34. Thus, even if Baroque's affiliated input suppliers were willing to provide additional company information, the deficiencies that Commerce identified with respect to these input suppliers, as well as the unaffiliated input suppliers, could only be remedied by the provision of government documentation by the GOC. Remand Results at 30. Moreover, Commerce's Remand Supplemental Questionnaire specifically referenced Baroque's affiliated input suppliers, but the GOC did not provide the requested information for these or any of the other suppliers in response. *Id*. at 30. Thus, Commerce determined that its analysis of the GOC's failure to cooperate applies to Baroque's two affiliated input suppliers as well as the unaffiliated input suppliers. *Id.*

This Court should continue to hold, as it did previously, that Commerce reasonably determined that government documentation is necessary. Further, now that Commerce has explicitly requested government documentation from the GOC and received none, this Court should sustain Commerce's application of AFA to find that certain of Baroque's input suppliers are authorities within the meaning of 19 U.S.C. § 1677(5)(B).

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

/s/ Brendan Jordan
BRENDAN JORDAN
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0342
E-mail: Brendan.D.Jordan@usdoj.gov

Attorneys for Defendant

OF COUNSEL:
Alyson Finley
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

October 5, 2026